# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 19, 2000 Session

## STATE OF TENNESSEE v. JOE W. STEWARD

**Appeal from the Circuit Court for Lewis County**
**No. 6004     Cornelia A. Clark, Judge**

---

### No. M2001-2431-CCA-RM-CD - Filed January 18, 2002

---

The defendant, Joe W. Steward, was convicted of driving under the influence, second offense, and possession of a weapon with intent to go armed. The trial court denied his challenge to the propriety of a roadblock. This court affirmed. See State v. Joe Steward, No. M1999-01284-CCA-R3-CD (Tenn. Crim. App., at Nashville, Aug. 18, 2000); see also Tenn. R. App. P. 11. Our supreme court granted an application for permission to appeal and, after filing its opinion in State v. Hicks, 55 S.W.3d 515 (Tenn. 2001), remanded the case to this court for reconsideration. By the guidelines established in Hicks, it is apparent that the record is insufficient to establish a compelling state interest to justify the roadblock. The judgments of the trial court are, therefore, reversed and the indictments are dismissed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Reversed; Cause Dismissed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Gary M. Howell, Columbia, Tennessee, for the appellant, Joe W. Steward.

Paul G. Summers, Attorney General & Reporter; Marvin E. Clements, Jr., Assistant Attorney General; and Jeffrey L. Long, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On the evening of August 18, 1998, Sergeant Bill Ray and Trooper Michael McAllister conducted a traffic enforcement roadblock on U. S. 412 East in Lewis County. At approximately 8:00 P.M., Trooper McAllister attempted to stop the defendant, who was driving his vehicle in the direction of the roadblock. According to Trooper McAllister, the defendant initially slowed his vehicle, but then accelerated past the trooper before finally stopping in the center of the roadway. The trooper detected the odor of alcohol emanating from the defendant. Upon questioning, the defendant acknowledged that he had consumed five beers. He had a cooler which contained nine

more beers in the back seat of the vehicle. Trooper McAllister also found a .357 caliber pistol in the front seat. After administering field sobriety tests, Trooper McAllister placed the defendant under arrest. Because the troopers did not have DUI testing equipment at the scene, the defendant was transported to an ambulatory care center where blood was drawn for chemical testing. After the defendant's arrest, the troopers terminated the roadblock. The estimated duration of the roadblock was from 7:44 P.M. to 8:00 P.M., a total of 16 minutes.

Sergeant Ray established the location, the timing, and the procedures of the roadblock. There was no written plan. He confirmed that he had no portable DUI equipment at the scene. The troopers intended to stop every vehicle that was driven through the roadblock, if possible; however, several cars were able to pass through without being stopped during times that both troopers were occupied with motorists that had stopped their vehicles.

Trooper McAllister testified that the purpose of the roadblock was traffic enforcement, which included checking for driver's licenses, vehicle registrations, and child restraint violations. The troopers were not checking for equipment violations on agricultural or commercial vehicles because they did not have the means to do so. Trooper McAllister claimed authority for the roadblock under General Order 410 of the Department of Safety, which requires the presence of at least two officers in marked patrol cars. The order also requires the approval of a lieutenant or a sergeant and the activation of the equipment on the patrol cars. It was Trooper McAllister's testimony that the order required no pre-approved plan for a traffic enforcement roadblock. He stated that after the completion of such a roadblock, an activity form must be completed by the supervisor and signed by the district captain. Trooper McAllister testified that he had followed the established procedure and that Sergeant Ray, Lieutenant Dempsey Holder, and Captain W.C. Thompson had executed the requisite follow-up documentation.

Trooper McAllister acknowledged that a different procedure was mandated for a sobriety roadblock. He testified that this process, governed by General Order 410-1, must be pre-approved by a colonel five days prior to the roadblock. A minimum of six officers must be involved. The news media must be notified in advance as to the location and length of the roadblock. According to Trooper McAllister, the procedure requires "no less than three days' prior notice for a sobriety checkpoint."

The defendant moved to suppress the evidence collected as a result of his stop at the roadblock, arguing that the roadblock failed to comply with the requirements of either State v. Downey, 945 S.W.2d 102 (Tenn. 1997), or THP General Order 410-1 regarding sobriety checkpoints. The trial court found that although the roadblock failed to comply with Downey, Downey "was not applicable because the roadblock was a traffic enforcement roadblock rather than a sobriety roadblock." The trial court denied the motion to suppress because the roadblock complied with the provisions of THP General Order 410, noting that in Downey, our high court had observed that it was "not address[ing] the specific provisions of General Order 410 . . . [or] consider[ing] any provision of law that may authorize Tennessee Highway Patrol Officers to make stops for the purpose of checking drivers' licenses." Downey, 945 S.W.2d at 105 n.3.

-2-

Relying on State v. David Arthur McCarter, No. 03C01-9406-CR-00240 (Tenn. Crim. App., at Knoxville, Mar. 13, 1995), and State v. David Lynn Hagy, No. 03C01-9505-CR-00152 (Tenn. Crim. App., at Knoxville, Dec. 5, 1995), this court approved the trial court's finding that the roadblock complied with General Order 410 and affirmed the convictions. Steward, No. M1999-01284-CCA-R3-CD, slip op. at 4-5. Some months after our decision, our high court determined in State v. Hicks that the requirements of State v. Downey are applicable in all cases involving challenges to roadblocks under the Tennessee Constitution. Hicks, 55 S.W.3d at 524.

Both the state and federal constitutions protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Tenn. Const. art. I, § 7. Any police activity which involves a stop of an automobile qualifies as a seizure under both the state and federal constitutions. Delaware v. Prowse, 440 U.S. 648 (1979); State v. Westbrooks, 594 S.W.2d 741 (Tenn. 1979). An investigatory stop, therefore, must be based upon an articulable and reasonable suspicion of criminal activity. See Terry v. Ohio, 392 U.S. 1 (1968).

In Downey, our supreme court addressed the constitutionality of a sobriety roadblock at which officers stopped motorists whose prior conduct was suspicionless. In doing so, the high court adopted the balancing test used by the United States Supreme Court to analyze the constitutionality of a highway sobriety checkpoint in Michigan v. Sitz: "[T]he reasonableness of a seizure . . . less intrusive than a traditional arrest depends on a balancing of 'the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.'" Downey, 945 S.W.2d at 107 (quoting Michigan v. Sitz, 496 U.S. 444 (1990)).

In Hicks, the defendant moved to suppress five pounds of marijuana that had been discovered by officers conducting a driver's license roadblock on the grounds that the stop was unreasonable under Article I, Section 7 of the Tennessee Constitution. The trial court granted the motion to suppress and the state appealed the ruling to this court. This court, holding that driver's license roadblocks are generally permissible under the Tennessee Constitution, reversed the trial court. A majority of our supreme court, however, concluded that the trial court had properly suppressed the evidence because the state had failed to establish a sufficiently compelling interest to justify a driver's license roadblock and because the roadblock had failed to comply with Downey. Hicks, 55 S.W.3d at 531. In applying Downey, the majority "conclude[d] that the presence of a sufficiently compelling interest is necessary under Article I, [S]ection 7 before an examination of the other aspects of a roadblock may proceed." Id. at 526. Our high court ruled that in cases involving driver's license roadblocks, the following standards apply:

> [T]he [s]tate must show that drivers not possessing a license are unable to safely operate motor vehicles on the roads and highways of this state; that an unlicensed driver invariably presents an imminent danger of death or serious bodily injury to other drivers that is not typically present with licensed drivers; and that the safety threat from unlicensed drivers is of such a magnitude that the problem, coupled with its risk of harm, commands heightened attention. Only when this showing is made

may courts find that the [s]tate has a sufficiently compelling interest to justify maintaining drivers' license roadblocks.

Id. at 527. Justice Barker, writing for the majority, wrote as follows:

In demonstrating this sufficiently compelling state interest in . . . future cases, however, we emphasize that the [s]tate may not merely rely upon its general interest in maintaining highway safety to justify suspicionless seizures of its citizens, no matter how "minimal" one may be able to characterize the intrusion. To the extent that the [s]tate's justification for maintaining a roadblock does not reflect a real, compelling interest in curbing a substantial and imminent threat to the safety of motorists on public roads, one may be unable to distinguish this supposed interest in safety from a more general interest in ordinary crime control. However, as the United States Supreme Court has made clear, and as we agree has long been the law in Tennessee, in no case may the [s]tate establish a roadblock merely "to detect evidence of ordinary criminal wrongdoing." . . . Instead, "[w]hen law enforcement authorities pursue primarily general crime control purposes at checkpoints . . ., stops can only be justified by some quantum of individualized suspicion." . . . Therefore, unlike many of our sister states, this [c]ourt will not presume the existence of a compelling interest until the [s]tate introduces some proof of the need to curb a substantial and imminent threat to the safety of motorists on public roads distinctly resulting from the conduct of unlicensed drivers.

Moreover, we also emphasize that the [s]tate may not merely rely upon its general interest in maintaining the integrity of its drivers' licensing scheme to justify future roadblocks. We see no indication from the record that the [s]tate's interest in enforcing a drivers' license law is any greater than its interest in enforcing any other law, and indeed, the [s]tate's interest in enforcing other criminal laws is at least as great as it is in enforcing laws regulating drivers' licenses. If the [s]tate may not legitimately establish roadblocks to detect other violations, it follows that the [s]tate may not do so merely to enforce drivers' license laws. Therefore, to justify suspicionless stops in this context, the [s]tate must necessarily rely upon the need to curb a substantial and imminent threat to the safety of motorists on public roads distinctly resulting from the conduct of unlicensed drivers.

Id. at 529-30 (citations omitted).

In our view, our supreme court's decision in State v. Hicks requires that the evidence challenged by the defendant in this case be suppressed. The trial court correctly found that the roadblock at issue did not comply with State v. Downey. Understandably, the state made no real effort to prove a sufficiently compelling interest to justify the roadblock. While the state now argues that it has a "vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles [and] that these vehicles are fit for safe operation," it failed to provide evidence at

-4-

the suppression hearing that unlicensed drivers are unsafe, that they present an increased danger of imminent death or serious bodily injury, or that they pose a threat that requires heightened attention. The record is also devoid of any evidence regarding the dangers posed by unregistered vehicles and improperly restrained children, the remaining two justifications offered for the roadblock by Trooper McAllister. Although child safety through proper restraint is a legitimate state interest, this court may not assume that it is sufficiently compelling to justify the roadblock. As our supreme court cautioned in Hicks, "because the [s]tate has the burden of establishing the reasonableness of the seizure, one may not merely presume that [an] interest[] [is] sufficiently compelling to justify abrogating constitutional guarantees. Only when the [s]tate makes the required showing, as it has previously done with sobriety checkpoints, may courts accept the presence of the compelling interest and proceed to further analyze the roadblock under this decision and Downey." Id. at 527-28.

Accordingly, the judgments of the trial court are reversed and the indictments are dismissed.

_____
GARY R. WADE, PRESIDING JUDGE